UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

CRIMINAL ACTION NO. 6:16-CR-00056-GFVT-EBA
(Related Civil Action No. 6:19-CV-260-GFVT-EBA)

UNITED STATES OF AMERICA,                                                    PLAINTIFF,

V.                              **RECOMMENDED DISPOSITION**

JOSEPH MONEY,                                                                DEFENDANT.

*** *** *** ***

Joseph Money, proceeding *pro se*, brings this action pursuant to 28 U.S.C. § 2255, seeking to vacate, set aside, or correct his sentence of 144 months. [R. 330]. Having been fully briefed, this matter is now ripe for review. This Court recognizes that Money is proceeding *pro se* and construes his motion more leniently. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Castro v. United States*, 540 U.S. 375, 381-83 (2003). Nevertheless, due to the following substantive deficiencies in his motion to vacate, Money fails to establish that he is entitled to relief under 28 U.S.C. § 2255. Therefore, it is RECOMMENDED that Money's motion to vacate be DENIED.

### I. FACTS AND PROCEDURAL HISTORY

On June 22, 2017, a grand jury charged Money with one count of conspiracy to distribute methamphetamine in violation of 21 U.S.C. § 846 (Count 1); two counts of distribution of methamphetamine in violation of 21 U.S.C. § 841(a)(1) (Counts 7-8); possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (Count 9); and possession of body armor in violation of 18 U.S.C. § 931(a) (Count 10). [R. 1]. On August 31, 2017, Money entered into a plea agreement and pled guilty to Count 1, conspiracy to distribute methamphetamine. [R. 186; 187]. Money admitted to the following facts contained in his plea agreement:

> Between January of 2016 and November 30, 2016, in Laurel County and Whitley County within the Eastern District of Kentucky and elsewhere, the Defendant conspired and agreed with others to distribute a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance.
>
> Specifically, the Defendant worked together with others to obtain methamphetamine from sources of supply for the purpose of distribution in the Eastern District of Kentucky. Once the methamphetamine was obtained, the Defendant worked together with others to distribute that methamphetamine in Laurel County and Whitley County, Kentucky.
>
> The Laurel County Sheriff's Office and Drug Enforcement Administration utilized the services of a confidential source to make controlled purchases from the Defendant at his residence in Laurel County, Kentucky. On March 3, 2016, the confidential informant purchased approximately 1 gram of methamphetamine from the Defendant. On March 8, 2016, the confidential informant purchased approximately 3.5 grams of methamphetamine from the Defendant.
>
> [R. 186 at p. 2].

On May 2, 2018, Money was sentenced to 144 months. [R. 266]. On October 31, 2019, Money filed this motion to vacate his sentence under § 2255. [R. 330]. Specifically, Money's motion to vacate alleges five claims of ineffective assistance of counsel: (1) failure to investigate; (2) failure to request a suppression hearing; (3) failure to investigate and object to Money's career offender status; (4) failure to file an appeal; and (5) failure to challenge forfeiture.

## II. STANDARD OF REVIEW

A motion brought pursuant to 28 U.S.C. § 2255 is a collateral attack on a conviction. Pursuant to 28 U.S.C. § 2255, a prisoner has a statutory right to collaterally attack his conviction or sentence. *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999). For a federal prisoner to prevail on such a claim, he bears the burden of showing that: (1) his conviction resulted from an error of constitutional magnitude; (2) his sentence was imposed outside the statutory limits; or (3) an error of fact or law occurred that was so fundamental as to render the entire proceedings invalid. *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003), cert. denied, 540 U.S. 879 (2003).

If the prisoner alleges constitutional error, he must establish by a preponderance of the evidence that the error "had a substantial and injurious effect or influence on the proceedings." *Watson*, 165 F.3d at 488 (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)). Alternatively, if he alleges a non-constitutional error, he must establish "a fundamental defect which inherently results in a complete miscarriage of justice . . . an error so egregious that it amounts to a violation of due process. *Watson*, 165 F.3d at 488 (citing *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990).

### III. ANALYSIS

**A. Ineffective Assistance of Counsel**

To prevail on ineffective assistance of counsel under Section 2255, Money must show two essential elements: (1) deficient performance and (2) how "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984) (stating that "[u]nless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable").

First, regarding deficient performance, reviewing courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance." *Id.* To show representation fell below an objective standard of reasonableness, Money must articulate specific acts or omissions to show how counsel's performance fell "outside the wide range of professionally competent assistance." *Id.* at 690.

Second, Money must also establish prejudice by showing that there is a reasonable probability that, but for counsel's unprofessional errors, the result of his proceedings would have been different. *Id.* at 694-95. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 111-12 (2011) (citing *Strickland*, 466 U.S. at

696)). "When deciding ineffective-assistance claims, courts need not address both components of the [deficient performance and prejudice] inquiry 'if the defendant makes an insufficient showing on one.'" *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004); *Strickland*, 466 U.S. at 697. Decisions that "might be considered sound trial strategy" do not constitute ineffective assistance of counsel. *Michel v. Louisiana*, 350 U.S. 91, 101 (1955). While trial counsel's tactical decisions are not completely immune from Sixth Amendment review, they must be particularly egregious before they will provide a basis for relief. *Martin v. Rose*, 744 F.2d 1245, 1249 (6th Cir. 1984). Further, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (quoting *Strickland*, 466 U.S. at 691). "Counsel is constitutionally ineffective only if performance below the professional standards caused the defendant to lose what he otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

**i. Failure to Investigate Claim**

In Money's first claim, he alleges his counsel, Hunter Payne, failed to investigate statements made by a witness. [R. 336 at p. 3]. Discovery in Money's case included a statement made by Darla McCormick that she had personally observed Money selling methamphetamine out of his camper. [*Id.*; R. 338-1 at p. 1-2]. Money argues that McCormick's statement is false because he was incarcerated from March 20, 2016 through May 31, 2016. [R. 336 at p. 5]. Thus, he states that McCormick could not have observed him selling methamphetamine during the "next few months" after March of 2016 because he was in jail. [*Id.*]. On the other hand, the Government argues that counsel's decision to not investigate the truthfulness of Darla McCormick's statement was reasonable due to additional evidence against Money. [R. 348 at p. 4]. The undersigned agrees.

4

Counsel owes his client "a duty to make a reasonable investigation or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. In order to prove the prejudicial prong of *Strickland*, Money "must allege with specificity what the investigation would have revealed and how it would have altered the outcome." *United States v. Hassan*, 2014 U.S. Dist. LEXIS 150258, 2014 WL 5361942, at *5 (E.D. Mich. Oct. 21, 2014) (quoting *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989). Mere speculation that an alternative strategy would have altered the judicial outcome is not sufficient. *Hodge v. Haeberlin*, 579 F.3d 627, 640 (6th Cir. 2009) (stating the defendant's "speculation that his testimony would have left a favorable impression with the jury does not demonstrate the required prejudice under *Strickland*").

The evidence in this case is that on March 3, 2016 and March 8, 2016, law enforcement conducted two controlled purchases of methamphetamine from Money. [R. 405 at p. 6]. On March 20, 2016, law enforcement seized 10.5 grams of methamphetamine from Money during a traffic stop. [*Id.*]. On June 9, 2016, law enforcement conducted another traffic stop on Money where they found 42 grams of methamphetamine, several small bags, a syringe, and digital scales. [*Id.*]. On November 29, 2016, law enforcement conducted a search of co-conspirator Michael McCormick, Sr.'s property, where they discovered methamphetamine and firearms. [*Id.* at p. 7-8]. McCormick, Sr. agreed to an interview after the search, where he stated that he received methamphetamine which he then distributed to Money in half ounce quantities. [*Id.* at p. 9]. Money was on the property at the time of the search and admitted to receiving methamphetamine from McCormick, Sr. in "user quantities." [*Id.* at p. 8-9]. Additionally, the presentence investigation report stated that "[a]dditional statements made by members of the conspiracy during the course of the investigation revealed that Money was involved in distribution of the methamphetamine and would distribute

5

[one fourth] to [one half] ounce quantities daily." [*Id*. at p. 10]. Thus, considering this additional evidence, Payne's decision not to investigate the truthfulness of Darla McCormick's statement was reasonable and did not constitute deficient performance, because even if McCormick's statement was false, Money fails to allege how an investigation into this statement by Payne would have affected the outcome of his case. As stated above, there is a large amount of additional evidence that Money was involved in a conspiracy to distribute methamphetamine which Money did not object to. Money has failed to show how an investigation into McCormick's statement alone would have changed the outcome of his case. Thus, Money's first claim of ineffective assistance in failure to investigate the truthfulness of McCormick's statement must fail because he does not show deficient performance or prejudice.

## ii. Failure to Request a Suppression Hearing

In Money's second claim, he alleges counsel refused to request a suppression hearing to keep out certain evidence. [R. 336 at p. 5]. It is unclear exactly what evidence Money is referring to. Money mentions statements by McCormick and by Jennifer Frazier. [R. 336 at p. 6]. He also states that there were no "test results on any methamphetamine" and that there were no drug test results. [*Id*.]. In Money's reply, he states that there was no "chain of custody" evidence. [R. 390-1 at p. 5]. Money argues that Payne should have filed a motion to suppress the existing evidence and a subsequent motion to dismiss the remaining charges in the indictment. [R. 336 at p. 6].

For the failure to file a suppression motion to constitute deficient performance, the meritorious nature of the motion must be so plain that "no competent attorney would think a motion to suppress would have failed." *Hendrix v. Palmer*, 893 F.3d 906, 922 (6th Cir. 2018) (quoting *Premo v. Moore*, 562 U.S. 115, 124 (2011)). The movant must demonstrate that counsel had no reasonable strategic rationale for not filing the motion. *Id.* (citing *Davis v. Lafler*,

6

658 F.3d 525, 537 (6th Cir. 2011)).

Here, Money has failed to meet his burden with respect to the statements by McCormick and Frazier. Money offers no viable legal argument why either of the statements should have been suppressed. Instead, he simply alleges that they are false. [R. 336 at p. 6]. Conclusory and unsupported allegations are legally insufficient to support a motion to vacate. *Short*, 504 F. 2d at 65; *Spencer v. United States*, 43.F.3d 1472 (6th Cir. 1994) (holding a claim for ineffective assistance without a factual basis must fail). Thus, Money's claim for ineffective assistance in counsel's failure to file a motion to suppress the statements of McCormick and Frazier must fail.

Similarly, Money's claim of ineffective assistance for failure to file a motion to suppress based on the lack of a drug test and chain of custody evidence must fail as well. Money fails to allege facts sufficient to show that a motion to suppress based on either of these issues would have been successful. Additionally, Money fails to demonstrate prejudice with respect to these claims. Thus, Money's second claim of ineffective assistance of counsel for failure to file a motion to suppress must fail because Money does not show deficient performance or prejudice.

### iii. Failure to Investigate and Object to Money's Career Offender Designation

Money's third claim alleges that counsel was ineffective in his failure to investigate the basis for Money's career offender status and in his failure to object to that status. [R. 336 at p. 7]. Money argues that Payne should have objected to the use of two Kentucky second degree assault convictions as predicate offenses for the District Court's application of the career offender sentencing enhancement under the United States Sentencing Guidelines (U.S.S.G.). [*Id*.]. To support his claim, Money makes several arguments which this Court will address individually. First, Money argues counsel was ineffective in failing to investigate the underlying state convictions. [*Id*.]. Second, Money argues that counsel's failure to challenge the use of the

7

convictions as predicate offenses resulted in prejudice. [*Id*.]. Third, Money argues that his assault convictions are no longer crimes of violence after the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015), which invalidated the residual clause of the Armed Career Criminal Act. [*Id*.].

**a. Money's Failure to Investigate Underlying Assault Convictions Claim**

Money argues that counsel was ineffective in his failure to investigate the underlying assault convictions which served as the predicate offenses for Money's career offender sentencing enhancement. [R. 336 at p. 7]. Money's 2009 conviction resulted from an argument Money had with the victim. According to the presentence investigation report, Money kicked in the back door of the victim's home and assaulted him, causing a "large cut above his right eye and several other scrapes and cuts about his body." [R. 405 at p. 13]. Money's 2013 conviction resulted from an altercation where Money assaulted the victim with a metal pipe, causing "serious physical injury." [R. 405 at p. 14].

Counsel owes his client "a duty to make a reasonable investigation or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. To prove the prejudicial prong of *Strickland*, Money "must allege with specificity what the investigation would have revealed and how it would have altered the outcome." *United States v. Hassan*, 2014 U.S. Dist. LEXIS 150258, 2014 WL 5361942, at *5 (E.D. Mich. Oct. 21, 2014) (quoting *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989). In order to succeed on a claim of ineffective assistance for failure to investigate, Money must show both that counsel failed to investigate and that the investigation would have altered the outcome of the case. *See Campbell*, 364 F.3d at 730; *Strickland*, 466 U.S. at 697. Here, Money alleges that an investigation would have shown that his two second degree assault convictions were not violent crimes and instead his actions were taken

8

in "self-defense." [R. 336 at p. 7]. However, the problem with Money's argument is that an investigation into his underlying assault convictions would not have altered the outcome because both convictions were properly used as predicate offenses for the career offender sentencing enhancement.

Under U.S.S.G § 4B1.1, "[a] defendant is a career offender if (1) the defendant was at least eighteen years old at the time defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." Under U.S.S.G § 4B1.2's elements clause, a crime of violence is defined as "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that has as an element the use, attempted use, or threatened use of physical force against the person of another."

The Sixth Circuit has repeatedly held that under Kentucky law second degree assault is a violent felony because it has "as an element the use, attempted use, or threatened use of physical force against the person of another." *United States v. Colbert*, 525 F. App'x 364, 369 (6th Cir. 2013); *see e.g. United States v. McBride*, No. 20-5135, 2020 U.S. App. LEXIS 24763, at *8 (6th Cir. Aug. 5, 2020) (citing *United States v. Collins*, 799 F.3d 554, 596-97 (6th Cir. 2015) (holding second-degree assault in Kentucky qualifies as a crime of violence under the elements clause because it requires proof of physical injury or serious physical injury)). *Colbert* discussed the elements clause of the ACCA rather than the career offender guideline, however, the Sixth Circuit has stated that "because the text of the ACCA and Guidelines elements clauses are identical, we typically interpret both elements clauses the same way." *United States v. Burris*, 912 F.3d 386, 392 (6th Cir. 2019). Thus, Money's contention that his second degree assault convictions are not

9

violent felonies under the sentencing guidelines is wrong. Further, Money meets the additional requirements for the career offender sentencing enhancement in that he was over eighteen at the time he committed the instant offense and the instant offense is a controlled substance offense. *See* U.S.S.G § 4B1.1.

Thus, counsel's decision not to investigate Money's underlying convictions was reasonable due to prevailing Sixth Circuit case law holding that Kentucky second degree assault convictions are violent felonies under the sentencing guidelines. Further, Money fails to show that an investigation into his underlying assault convictions would have altered the outcome in his case. Thus, his failure to investigate his underlying assault convictions claim must fail.

Money also argues that his assault convictions were non-violent because his actions were taken in "self-defense" under "Kentucky Stand Your Ground Law." [R. 336 at p. 7]. To the extent Money seeks to relitigate his underlying state charges, he has not chosen the proper vehicle to raise those claims. A § 2255 petitioner can only collaterally attack prior state convictions on the basis he was denied his right to counsel at the state level. *See Daniels v. United States*, 532 U.S. 374, 382 (2001). Further, a defendant must challenge the underlying state convictions in either state court or a separate § 2254 petition. *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999). After the defendant succeeds in his challenge, he may then seek to reopen his federal sentence. *Id*. Money makes no argument that he was denied a right to counsel for his state level charges, nor does the record show that he has sought to challenge them in either state court or a 2254 petition. Thus, he may not seek to challenge them now. *See Daniels*, 532 U.S. at 382 (holding that a defendant who fails to attack or otherwise challenge underlying state convictions which form the basis of a federal sentence enhancement may not collaterally attack those convictions through a motion under § 2255).

**b. Money's Failure to Object Argument**

Second, Money argues that his counsel's failure to object to the classification of the two second degree assault convictions as violent felonies under the career offender enhancement resulted in Money receiving a higher sentence. [R. 390 at p. 3]. In support of his argument, Money cites *Burris*, 912 F.3d at 390, stating that the Sixth Circuit has mandated strict scrutiny of the application of career offender status. [*Id.*]. It is true that in *Burris*, the Sixth Circuit overturned *United States v. Anderson*, 695 F.3d 390 (6th Cir. 2012), the case which the Sixth Circuit relied upon in its determination that Kentucky second degree assault convictions are violent felonies under the elements clause of both the Armed Career Criminal Act and the sentencing guidelines. However, even post-*Burris*, Kentucky second degree assault convictions remain crimes of violence under the sentencing guidelines.

In *United States v. Anderson*, the Sixth Circuit held that aggravated assault under Ohio law qualified as a violent felony under the elements clause of the Armed Career Criminal Act. *Anderson* at 399. In *Burris*, the Sixth Circuit held that the *Anderson* panel applied the wrong definition of "serious physical harm" as used in the Ohio statute. *Burris* at 402. The *Anderson* panel applied the plain meaning of "serious physical harm" instead of the Ohio statutory definition, which included mental harm as well as physical harm. *Burris* at 397 (quoting Ohio Rev. Code §§ 2903.11(A)(1), 2903.12(A)(1), § 2901.01(A)(5)(a)). However, under the sentencing guidelines, the statute must have as an element the "use, attempted use, or threatened use of *physical* force" against another person in order to qualify as a crime of violence. *Burris* at 394 (quoting U.S.S.G. § 4B1.2(a)(1) (emphasis added)). The *Burris* panel determined that the Ohio statute was too broad to categorically qualify as a violent-felony predicate offense under the guideline's elements clause. *Burris* at 400. Thus, *Burris* held that *Anderson* was no longer binding. *Burris* at 406.

However, even under the analysis in *Burris*, a Kentucky second degree assault conviction remains a crime of violence under the sentencing guideline's elements clause. Unlike the Ohio statute, Kentucky's second degree assault statute criminalizes "serious physical injury," defined as "substantial physical pain or any impairment of physical condition." KRS 508.020; 500.080(13). Kentucky's definition of physical injury meets the definition of "physical force" used in the guidelines, which is " force capable of causing physical pain or injury to another person." *See Burris* at 392 n. 1 (quoting *Johnson v. United States*, 559 U.S. 133, 140 (2010)). Thus, as in *McBride*, a post-*Burris* Sixth Circuit decision holding that a Kentucky second degree assault conviction was a predicate offense supporting a career offender enhancement, Money's second degree assault convictions similarly support a career offender enhancement under the guidelines. *See United States v. McBride*, No. 20-5135, 2020 U.S. App. LEXIS 24763, at *8 (6th Cir. Aug. 5, 2020).

Thus, Money has failed to show he suffered prejudice by counsel's failure to object to Money's assault convictions as predicate offenses for the career offender enhancement because the offenses remain violent felonies under the elements clause of the sentencing guidelines.

Further, Money has failed to show deficient performance in his counsel's failure to object to the use of the assault convictions as predicate offenses. *See Lucas v. O'Dea*, 179 F.3d 412, 420 (6th Cir. 1999) ("Only in a rare case will a court find ineffective assistance of counsel based upon a trial attorney's failure to make an objection that would have been overruled under the then-prevailing law."). As stated above, Money's assault convictions were and continue to be violent felonies under the sentencing guidelines both pre- and post-*Burris*. Thus, any objection by Payne would have likely been overruled by the District Court.

**c. Money's *Johnson* Claim**

Money's third argument is that his assault convictions may no longer serve as predicate offenses for the career offender enhancement after the Supreme Court's decision in *Johnson*. In *Johnson*, the Supreme Court held that the residual clause of the Armed Career Criminal Act was unconstitutionally vague. *Johnson*, 135 S. Ct. at 2563. There are two issues with Money's third argument. First, Money was not sentenced under the Armed Career Criminal Act. Instead, he was sentenced as a career offender. [*See* R. 265; 405 at p. 11]. Second, Money's convictions are defined as crimes of violence under the elements clause of U.S.S.G. 4B1.2, not the residual clause. *See Collins*, 799 F.3d at 596-97. Thus, *Johnson* does not apply and Money's third and final argument must fail as well.

In conclusion, Money has failed to show both deficient performance and prejudice in his claim that counsel was ineffective for failing to investigate the underlying assault convictions which served as the predicate offenses for his career offender status. Money also failed to show both deficient performance and prejudice in his claim that counsel was ineffective for failing to object to the use of the assault convictions as predicate offenses. Lastly, Money's *Johnson* claim must fail as well because Money was not sentenced under the residual clause of the Armed Career Criminal Act.

**iv. Failure to File an Appeal**

In Money's fourth claim, he alleges counsel was ineffective in his failure to file an appeal after Money instructed him to do so. [R. 336 at p. 9-10]. On June 2, 2020, this Court held an evidentiary hearing on the limited issue of whether Money instructed counsel to file a notice of appeal.

In *Roe v. Flores-Ortega*, 528 U.S. 470, (2000), the United States Supreme Court addressed the test for assessing ineffective assistance claims for failure to file a notice of appeal, which is the

familiar two-pronged *Strickland* inquiry. *Regalado v. United States*, 334 F.3d 520, 524 (6th Cir. 2003); *Strickland*, 466 U.S. at 668. The Sixth Circuit has gone on to expand this protection for defendant(s) who have waived all or most of their right to appeal. *Campbell v. United States*, 686 F.3d 353, 360 (6th Cir. 2012). Even though the defendant has waived all or some of his rights to appeal, attorneys will still be found to have provided ineffective assistance of counsel if the attorney fails to file an appeal that a criminal defendant explicitly requests. *Id.* To help the federal courts in their analysis, *Roe* sets forth a three-part sequential analysis. First, the court must determine whether the defendant gave counsel express instructions regarding an appeal. *Roe* at 477. Second, if the court finds that the defendant did not provide express instructions, then it must determine whether counsel consulted with the defendant about an appeal. *Id.* at 478 Finally, if there was no consultation, then the court must decide whether the failure to consult was objectively unreasonable. *Roe* at 479. Whether or not counsel met his obligation to consult with his client depends on the totality of the circumstances. *Johnson v. United States*, 364 F. App'x 972 (6th Cir. 2010) (citing *Roe*, 528 U.S. at 480).

The first prong of the *Roe* analysis is whether defendant gave counsel express instructions to file an appeal. "[T]he failure to perfect a direct appeal, in derogation of a defendant's actual request, is a *per se* violation of the Sixth Amendment." *Campbell v. United States*, 686 F.3d 353, 358 (6th Cir. 2012) (quoting *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998)). Failing to file a notice of appeal when a defendant requests one satisfies both prongs of the ineffective-assistance-of-counsel test of *Strickland*. *Campbell*, at 357; *Ludwig*, 162 F.3d at 459. It is inappropriate to inquire whether any appeal would be successful. *Peguero v. United States*, 526 U.S. 23, 28 (1999). Similarly, a defendant's waiver of appellate rights does not excuse counsel's failure to file a notice of appeal. *See Campbell*, 686 F.3d at 360 (holding counsel ineffective for

14

failing to file notice of appeal when instructed to do so by defendant even if defendant waived all appellate rights). Thus, counsel has a duty to file a timely notice of appeal if requested to do so by his or her client. *Ludwig*, 162 F.3d at 459.

The parties here disagree on whether Money directly asked Payne to file an appeal. During the evidentiary hearing, Money testified that he told Payne that he wished to file an appeal when he signed his plea agreement. [Recording of Evidentiary Hearing at 9:40-10:10; 11:45-12:00]. Money stated that he told Payne to "file the notice" and that they would discuss the grounds for appeal after sentencing. [*Id.*]. Money further stated that he did not talk with Payne about filing an appeal after sentencing and he denied ever telling Payne that he did not want to file an appeal. [Recording of Evidentiary Hearing at 10:10-11:11]. Money affirmed that he wrote a letter to Payne after he was sentenced and stated the reason why he did not ask about his appeal was that he believed the deadline to file the appeal had passed. [Recording of Evidentiary Hearing at 15:40-16:50].

On the other hand, Payne testified that he discussed Money's plea agreement, specifically his rights to an appeal, with Money but that Money did not ask him to file an appeal at that time. [Recording of Evidentiary Hearing at 29:40-30:40; 25:10-25:51]. Payne also testified that he had a conversation with Money after sentencing where Money stated that he believed he got a fair sentence and had no interest in filing an appeal. [Recording of Evidentiary Hearing at 24:30-25:10]. Payne further testified that Money never directed him to file an appeal. [Recording of Evidentiary Hearing 25:10-25:51]. Payne's testimony is corroborated by his affidavit, where he stated that "[i]mmediately after sentencing, Defendant advised that he had no intention of appealing his sentence." [R. 350-1 at p. 2]. Payne's testimony is further corroborated by the letter Money wrote to Payne after sentencing thanking Payne for the job he did in representing Money,

15

stating "[a]fter all was said and done, I got a fair sentence." [R. 350-1 at p. 4-5].

"A petitioner's self-serving statements in an affidavit that are contradicted by a credible version of events in an affidavit from his trial counsel may be incredible as a matter of law." *United States v. Walls*, No. 2:05-cr-92-WOB, 2008 WL 927926, at *12 (E.D. Ky. Apr. 4, 2008) (citing *Gibson v. United States*, No. CV-06-5740, 2007 WL 210417, at *4 (E.D.N.Y. Jan. 25, 2007)). While Money's self-serving statements were made in open court rather than in an affidavit, they still conflict with Payne's credible version of events. Further, the letter Money wrote Payne echoed the same sentiment that Money believed he received a "fair sentence" which Payne claims Money told him after the sentencing hearing. Money's letter also requested documents related to his judgment, asked about a detective working the case, and asked about some pending state charges. [R. 350-1 at p. 4-5]. Notably, the letter did not mention an appeal, nor did it mention any intention Money had of filing an appeal.

Further, this Court is unconvinced that Money asked Payne to file an appeal before he received his sentence and without any basis for an appeal. Even if Money had asked Payne to file an appeal during their discussion of the plea agreement, it is reasonable that Payne would believe Money changed his mind based on his statements after the sentencing hearing. Thus, this Court finds that Money did not given Payne express instructions to file an appeal.

The second prong of the *Roe* analysis is whether counsel consulted with the defendant about an appeal. *Roe* at 478. Consultation occurs when the attorney "advis[es] the defendant about the advantages and disadvantages of taking an appeal, and mak[es] a reasonable effort to discover the defendant's wishes." *Regalado*, 334 F.3d at 525 (citing *Roe*, 528 U.S. at 478). If consultation has occurred, then "[c]ounsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." *Id.* If, on the other hand,

counsel failed to consult with his client, then the court must address whether the failure to consult, by itself, is indicative of deficient performance." *Id.*

Here, Money argues that there was generally a lack of effective communication between himself and Payne, which in turn carried over to Payne's failure to file an appeal. However, both Money and Payne testified that they discussed Money's appeal rights during their discussion of the plea agreement. [Recording of Evidentiary Hearing at 9:10-10:10; 29:40-30:40; 24:15-24:51]. Payne also testified that he discussed Money's wishes regarding appeal after the sentencing hearing. [Recording of Evidentiary Hearing at 24:30-25:10]. Further, after this discussion, Payne believed that Money's express instructions were that he did not wish to file an appeal. [*Id.*]. Thus, this Court finds that Payne consulted with Money about an appeal and that Payne's conduct was professionally reasonable.

Accordingly, Money has failed to establish by a preponderance of the evidence that Payne provided constitutionally deficient assistance by failing to file a notice of appeal. Finding Money has failed to establish the deficient performance prong of *Strickland*, the Court need not consider the prejudice prong on this claim. *Strickland*, 466 U.S. at 697.

**v. Failure to Challenge Forfeiture Claim**

Money's fifth claim alleges that counsel was ineffective in his failure to assist Money in challenging a seizure of money and personal items, including a camper, by state officers. [R. 336 at p. 11]. Money alleges a Laurel County Sheriff Office detective stole $250 from him in March of 2016. [*Id.* at p. 12]. He also claims that in April of 2016, law enforcement took his camper. [*Id.*]. Money states that he raised this matter with a state court judge, who ordered Money could retrieve personal items from the camper. [*Id.* at p. 13]. However, Money believed that he was unable to retrieve his property because his case had been federally adopted. [*Id.* at p. 13-14]. The indictment

17

states the property that the United States sought to forfeit from Money: various rounds of ammunition and body armor. [R. 1 at p. 8]. None of this property is the property Money discusses in his petition. Thus, there is no factual basis in the record supporting Money's allegation that law enforcement seized money and a camper from him, and Money's fifth claim must fail. *See Short v. United States*, 504 F. 2d 63, 65 (6th Cir. 1974) (holding allegations unsupported by facts are legally insufficient to support a motion to vacate); *Spencer v. United States*, 43.F.3d 1472 (6th Cir. 1994) (holding a claim for ineffective assistance without a factual basis must fail).

Further, Money requests this Court to order the Laurel County Sheriff's Office to pay him $3601.00 and to conduct an investigation into "ex-det[ective] Back." [R. 336 at p. 11]. Money asserts no legal or factual basis on which the Court should grant this request. To the extent that Money seeks this Court to right the perceived wrongs of the state court, Money has not chosen the proper avenue. *See Johnson v. United States*, No. 1:14-CV-1066, 2015 U.S. Dist. LEXIS 140173, at *8 (W.D. Mich. Oct. 15, 2015) ("A federal habeas action is not designed to remedy violations in a separate state court action."). Thus, this Court recommends that Money's requests for additional relief be denied.

### IV. Certificate of Appealability

A Certificate of Appealability may issue where a movant made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard requires a movant to demonstrate that "reasonable jurists would find that the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 120 S. Ct. 1595, 1604 (2000) (stating that issuance of a Certificate of Appealability in the context of a habeas petition filed under 28 U.S.C. § 2254, which legal reasoning applies with equal force to motions to vacate brought pursuant to 28 U.S.C. § 2255); *see also Miller-El v. Cockrell*, 123 S. Ct. 1029, 1039-40 (2003).

The reviewing court must indicate which specific issues satisfy the "substantial showing" requirement. 28 U.S.C. § 2253(c)(3); *Bradley v. Birkett*, 156 F. App'x 771, 774 (6th Cir. 2005).

Here, Money testified that he instructed his counsel Payne to file an appeal. Payne testified that Money did not ask him to file an appeal. Ultimately, looking at the testimony from the evidentiary hearing, Payne's affidavit, and the letter Money wrote to Payne, this Court concluded that Money did not ask Payne to file an appeal. However, a reasonable jurist could interpret the record and the testimony differently. That chance is sufficient to issue a certificate of appealability on that limited issue. Thus, this Court recommends that a certificate of appealability issue on the sole issue of whether Money instructed counsel to file an appeal.

## V. RECOMMENDATION

Accordingly, having reviewed Money's current motion to vacate [R. 330] in accordance with Rule 10 of the Rules Governing Section 2255 Habeas Cases, IT IS RECOMMENDED that:

1. Money's motion to vacate his sentence under § 2255 [R. 330] be DENIED WITH PREJUDICE.

2. Money's requests for additional relief be DENIED.

3. A Certificate of Appealability be ISSUED as to the limited issue of whether Money instructed counsel to file an appeal.

*** *** *** ***

The parties are directed to 28 U.S.C. § 636(b)(1) for a review of appeal rights governing this Recommended Disposition. Particularized objections to this Recommended Disposition must be filed within fourteen days from the date of service thereof or further appeal is waived. *United States v. Campbell*, 261 F.3d 628, 632 (6th Cir. 2001); *Thomas v. Ann*, 728 F.2d 813, 815 (6th Cir. 1984). General objections or objections that require a judge's interpretation are insufficient to

preserve the right to appeal. *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004); *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). A party may file a response to another party's objections within fourteen days after being served with a copy thereof. 28 U.S.C. § 636(b)(1)(C); FED. R. CRIM. P. 59(b)(1).

Signed January 14, 2021.



Signed By:
*Edward B. Atkins*  EBA
United States Magistrate Judge